**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RUSLAN KAZIEV** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  26-4837** |
| | : | |
| **JAMISON,** *et al.* | : | |

**<u>MEMORANDUM</u>**

**MURPHY, J.**                                                                        **August 7, 2026**

For many months, this court, courts in this district, and courts across the country have received habeas petitions from noncitizens living in the United States who were detained by the Department of Homeland Security (DHS), without a bond hearing, purportedly under § 1225(b) of the Immigration and Nationality Act (INA).  8 U.S.C. § 1225(b).  Most of those cases involved mandatory detention under § 1225(b)(2), which applies to "applicant[s] for admission" who are "seeking admission."  8 U.S.C. § 1225(b)(2).  We, alongside the overwhelming majority of courts, have held that this section does not apply to noncitizens who are already in the country.  A smaller subset of cases has involved noncitizens who were paroled into the country via humanitarian parole, their parole ended, and DHS then detained them, purportedly under § 1225(b)(1) — a provision which applies to "aliens arriving in the United States and certain other aliens who have not been admitted or paroled."  8 U.S.C. § 1225(b)(1).  We addressed this situation in *Gagiev v. Rose*, 2026 WL 657739 (E.D. Pa. Mar. 9, 2026), and concluded that noncitizens who were paroled into the United States are not subject to § 1225(b)(1).  Having carefully considered decisions since *Gagiev*, we again conclude that § 1225(b)(1) does not apply to individuals like Mr. Kaziev who were paroled into the United States, order Mr. Kaziev's immediate release, and decline to address Mr. Kaziev's remaining arguments under the APA and agency regulations.

## I.   FACTUAL BACKGROUND

Ruslan Kaziev, a Russian national, entered the United States in Calexico, California on approximately December 4, 2023.  DI 1 at ¶¶ 2, 18.  Soon after, he was encountered by Customs and Border Patrol (CBP) officers who detained, processed, and put him in expedited removal proceedings.  *Id.* at ¶¶ 2-3; DI 3-5 at 2-9; DI 3 at 7.  Mr. Kaziev expressed an intent to file for asylum, so CBP interviewed Mr. Kaziev.  DI 1 at ¶¶ 2-3.  CBP concluded that Mr. Kaziev expressed a credible fear of returning to Russia, so Mr. Kaziev was put into regular removal proceedings, given a Notice to Appear (NTA) before an immigration judge in January 2024, and granted temporary humanitarian parole into the United States under 8 U.S.C. § 1182(d)(5) while he pursued his asylum application.  DI 1 at ¶¶ 2-3; DI 3-3 at 2; DI 3-4 at 2; DI 3 at 7-8.  Mr. Kaziev's parole was authorized for one year, automatically expiring on January 20, 2024.  DI 3-4 at 2.  His asylum application remains pending.  DI 1 at ¶ 4; DI 3-2 at 3.

On July 9, 2026, Immigration and Customs Enforcement (ICE) officers arrested Mr. Kaziev during a traffic stop, without explanation, and detained him.  DI 1 at ¶¶ 5-6; DI 3-2 at 3.  The government is presently detaining Mr. Kaziev at the Federal Detention Center in Philadelphia, Pennsylvania, purportedly under 8 U.S.C. § 1225(b)(1) — the mandatory detention provision.  DI 1 at ¶¶ 6, 9, 11; DI 3 at 8.

Mr. Kaziev filed the instant habeas petition on July 11, 2026, asserting that he is not subject to mandatory detention under § 1225(b)(1) or (2) and that, in detaining him under those provisions, the government violated his due process rights, various provisions of the INA and Administrative Procedures Act (APA), and DHS's own regulations.  DI 1 at ¶¶ 27-48; *see also* DI 5 (Mr. Kaziev's reply).  The government responds that § 1225(b)(1) applies to Mr. Kaziev

2

and that his detention under that provision comports with due process and the APA.  DI 3 at 15-23.

## II.   MOTION AT ISSUE

Mr. Kaziev's petition for writ of *habeas corpus* asserts the following claims: (1) two violations of the Administrative Procedures Act (APA) under 5 U.S.C. § 706(2)(A), one for conduct not in accordance with the law and in excess of statutory authority, and the other for arbitrary and capricious conduct; (2) a Fifth Amendment due process violation; (3) a violation of the *Accardi* doctrine[1] established in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); and (4) a violation of the INA.  DI 1 at ¶¶ 27-48.  He asserts that we have jurisdiction to review his *habeas* petition under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, section 9 of the United States Constitution.  *Id.* at ¶ 12.

Among other arguments,[2] Mr. Kaziev proposes that § 1225(b)(1) does not apply to him because that section only applies to noncitizens "who have not been . . . paroled[,]" and he was paroled.  DI 1 at ¶¶ 25, 46-47 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(II)).  Mr. Kaziev cites numerous cases from this district in support of this position, including our own decision in *Gagiev*.  DI 5 at 2-4 (citing cases).  Accordingly, he asserts that his present detention pursuant to this provision is unlawful under the INA.  DI 1 at ¶ 48.  Mr. Kaziev also contends that the expedited removal order was never properly executed against him, highlighting that DHS never

---

[1] This doctrine requires government officials to follow applicable agency regulations. *Accardi*, 347 U.S. at 268 (reviewing and reversing the agency because it "fail[ed] to exercise its own discretion, contrary to existing valid regulations.").

[2] Because we need not reach these issues here, we do not summarize Mr. Kaziev's APA and *Accardi* arguments.

completed the requisite Form I-860 for such removal; the bottom of the form is blank.  DI 5 at 4-5.  According to Mr. Kaziev, this deficiency means that the expedited removal process was never properly started, such that he is not subject to detention under § 1225.  *Id.* at 5.[3]  And Mr. Kaziev argues that the government's detention of him and revocation of parole without meaningful notice or rationale violates his due process rights.  DI 1 at ¶¶ 38-41.

The government opposes[4] Mr. Kaziev's petition, asserting that his detention is authorized under § 1225(b)(1).  DI 3 at 15.  It argues that he is subject to § 1225(b)(1) detention, even though he is in standard removal proceedings, because he remains in the § 1225(b)(1) process until his removal proceedings conclude or until he withdraws his application for admission.  *Id.* at 16.  And the government maintains that Mr. Kaziev is subject to § 1225(b)(1), despite being paroled under § 1182(d)(5), because (1) the DHS Secretary's 2004 Expedited Removal Designation clarifies that this language only applies to certain noncitizens admitted or paroled into the United States following inspection by an immigration officer at a designated port-of-entry; (2) other cases from this district have concluded that, once humanitarian parole ends,

---

[3] Though we need not reach this issue here because we conclude that § 1225(b)(1) does not apply to Mr. Kaziev, we must highlight the concerns expressed by other judges in our district regarding DHS's failure to properly complete the Form I-860.  *See, e.g.*, *Seminario-Marcos v. Jamison*, No. 26-421 (E.D. Pa. Feb. 6, 2026), ECF 13 at 3-4 n.1; *Martins-Pereira v. Jamison*, No. 26-508 (E.D. Pa. Feb. 13, 2026), ECF 9 at 2 n.1.  Mr. Kaziev's "Notice and Order of Expedited Removal" is not signed by a supervisor, nor is the form's certificate of service section signed or otherwise completed.  DI 3-1 at 2.  This contradicts the regulatory requirements for expedited removal orders under 8 C.F.R. § 235.3, which — among other requirements — requires service of the Form I-860 upon the noncitizen and review and approval from an appropriate supervisor.  8 C.F.R. § 235.3(b)(2), (7).  Understandably, courts have questioned whether expedited removal proceedings were ever properly initiated in situations like Mr. Kaziev's.

[4] Again, because we need not address Mr. Kaziev's arguments regarding the APA and agency regulations, we do not summarize the government's position on these issues.

4

noncitizens return to § 1225(b)(1)'s detention authority; and (3) *Matter of M-S-*, 27 I & N Dec. 509 (A.G. 2019), held that noncitizens transferred to full proceedings following the finding of a credible fear are ineligible for bond. *Id.* at 17-19. Largely relying upon the entry fiction doctrine, the government argues that Mr. Kaziev's detention does not violate due process because Mr. Kaziev — whom the government asserts has the status of an individual at the threshold of entry into the United States — is entitled to only whatever process Congress has provided to him. DI 3 at 21-23. This process, the government insists, permits mandatory detention without a bond hearing. *Id.* at 22.

## III.   STANDARD OF REVIEW

### A.   Reviewability and relief in the immigration framework

The fundamental principle of judicial review, established in *Marbury v. Madison*, 5 U.S. 137, 177 (1803), extends both to questions of constitutional law and questions of statutory interpretation. *Id.* at 178-80; *I.N.S. v. St. Cyr*, 533 U.S. 289, 302-03 (2001) (superseded by 8 U.S.C. § 1252(a)(2)(D), as recognized in *Wilkinson v. Garland*, 601 U.S. 209, 218 n.3 (2024), which restored jurisdiction over constitutional claims and questions of law). We apply a strong presumption in favor of judicial reviewability when an administrative agency interprets a statute. *Kucana v. Holder*, 558 U.S. 233, 251-52 (2010); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020). Only clear and convincing evidence may rebut this well-settled presumption. *Kucana*, 558 U.S. at 251-52. This reviewability presumption applies when agencies interpret U.S. immigration laws. *Guerrero-Lasprilla*, 589 U.S. at 229.

### i.   Habeas corpus

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in

5

Cases of Rebellion or Invasion the public Safety may require it."[5]  As a federal district court, we may grant *habeas* relief to an individual who is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *St. Cyr*, 533 U.S. at 301 (citations and footnote omitted).  This includes review of challenges to "detentions based on errors of law, including the erroneous application or interpretation of statutes[,]" as well as constitutional violations.  *Id.* at 302-303 (footnotes omitted).  To find judicial review of constitutional claims precluded, we must find that Congress clearly intended to so preclude our review.  *Demore v. Kim*, 538 U.S. 510, 517 (2003) (citations omitted).  Even more clarity is necessary when *habeas* relief is sought.  "[W]here a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent."  *Id.* (citing *St. Cyr*, 533 U.S. at 298, 308-09).[6]

### ii.    Immigration and Nationality Act

### a.    Detention provisions

Section 1225 of the INA governs the "[i]nspection by immigration officers" of "[a]liens" and provides for the mandatory detention and expedited removal of certain "inadmissible

---

[5] Found in Article I, Section 9, Clause 2 of the Constitution, this is known as the "Suspension Clause."

[6] *See, e.g.*, *Kim*, 538 U.S. at 513-18 (holding that a Lawful Permanent Resident (LPR) could challenge the constitutionality of holding him in mandatory detention under 8 U.S.C. § 1226(c) because he was challenging the statutory framework permitting his detention without bail); *St. Cyr*, 533 U.S. at 293, 298, 314 (upholding a noncitizen's ability to challenge, via a *habeas* petition, the Attorney General's conclusion that he was ineligible for discretionary relief "as a matter of statutory interpretation").

arriving aliens." 8 U.S.C. § 1225.  The first part, § 1225(a)(1), pertains to "[a]liens treated as applicants for admission" and states:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).

The second part, § 1225(b), pertains to the "inspection of applicants for admission."  8 U.S.C. § 1225(b).  Section 1225(b)(1) is titled the "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled."  8 U.S.C. § 1225(b)(1). This subsection provides screening provisions for those subclasses of noncitizens — again, those "arriving in the United States" and certain other noncitizens "who have not been admitted or paroled."  8 U.S.C. § 1225(b)(1)(A).  Under § 1225(b)(1)(A)(i), an immigration officer conducting a screening of a noncitizen shall order the noncitizen removed from the United States without further hearing or review — unless the noncitizen expresses an intent to apply for asylum or a fear of persecution — if the officer determines that the noncitizen meets two requirements: the noncitizen is (1) "inadmissible" to the United States because he lacks proper entry documents or because he willfully misrepresented a material fact on his admission application or engaged in fraud, 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7) (grounds of inadmissibility); and he either (a) "is arriving in the United States" (known as the "Arriving Aliens Provision"), 8 U.S.C. § 1225(b)(1)(A)(i), or he (b) "has not been admitted or paroled into the United States" and "has not affirmatively shown" to the immigration officer's satisfaction that he has been continuously, physically present in the United States for the two-

7

year period immediately before the inadmissibility determination (known as the "Designation Provision"), 8 U.S.C. § 1225(b)(1)(A)(iii)(II).  Section 1225(b) thus pertains to noncitizens who (1) are inadmissible because they lack proper entry documents or engaged in a willful misrepresentation of fact or fraud on their admission application **and** (2) fall within either the INA's Arriving Aliens Provision or Designation Provision.  *See Vasquez-Rosario v. Noem*, 2026 WL 196505, at *3 (E.D. Pa. Jan. 26, 2026) (explaining this framework).

If the noncitizen is deemed inadmissible and neither demonstrates his intent to apply for asylum nor indicates a fear of persecution, torture, or returning to his country of origin, then the immigration officer will issue a Notice and Order of Expedited Removal.  8 C.F.R. § 235.3(b)(2)(i); *Vasquez-Rosario*, 2026 WL 196505, at *3.  However, if the noncitizen indicates his intent to apply for asylum or expresses a fear of persecution, the immigration officer shall refer him for an interview with an asylum officer, who will assess whether the noncitizen has a credible fear of persecution.  8 U.S.C. § 1225(b)(1)(A)(ii), (B)(ii)-(iii).  If the asylum officer concludes that the noncitizen has expressed a credible fear of persecution, he shall be detained for further consideration of his asylum application; if the officer determines that he lacks a credible fear of persecution, then the officer shall order him removed without further hearing or review, other than review by the Attorney General of the credible fear determination upon the noncitizen's request.  8 U.S.C. § 1225(b)(1)(B)(ii)-(iii).

Nestled within § 1225(b)(1)(B)'s asylum interview provision, underneath the provision regarding "removal without further review if no credible fear of persecution[,]" is what is known as the mandatory detention provision.  This states that "[a]ny alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution

and, if found not to have such a fear, until removed."  8 U.S.C § 1225(b)(1)(B)(iii)(IV).  We, as well as other courts, have interpreted this language as requiring the mandatory detention of noncitizens placed in expedited removal proceedings pursuant to § 1225(b)(1).  *Gagiev*, 2026 WL 657739, at *6; *Vasquez-Rosario*, 2026 WL 196505 at *3 (citing 8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV)).  They also will be subject to mandatory detention if they are "an alien who is an applicant for admission" who is "seeking admission" and the immigration officer determines that they are "not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A).[7]  Taken together, sections 1225(b)(1)-(2) require continued detention until either the officers finish considering the asylum application (§ 1225(b)(1)(B)(ii)) or until the removal proceedings conclude (§ 1225(b)(2)(A)).  *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citations omitted).

Different INA provisions apply to noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303 (citing 8 U.S.C. § 1226).  Section 1226(a) permits, based on a warrant issued by the Attorney General, the arrest and detention of "an alien" pending a decision regarding whether he will be removed.  8 U.S.C. § 1226(a).  Provided that the individual does not fall under § 1226(c), § 1226(a) applies to him; if § 1226(a) applies, federal regulations require that he receive a bond hearing at the outset of his detention.  *Jennings*, 583 U.S. at 306 (citing 8 U.S.C. §§ 1226(a), (c); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

---

[7] This includes "noncitizens who are arriving in the United States, seeking admission, and are inadmissible for some reason other than misrepresentation or failure to meet document requirements (such as those having certain types of criminal convictions or those who would pose a foreign policy risk or are associated with terrorists, the Communist party, or Nazi activity)."  *Vasquez-Rosario*, 2026 WL 196505, at *4 (citation omitted).

**b.      Parole provisions**

Section 1182(d) of the INA provides for the temporary admission of noncitizens through humanitarian parole.  8 U.S.C. § 1182(d).  Subsection (5)(A) permits the DHS Secretary to temporarily parole noncitizens into the United States, subject to certain exceptions.  8 U.S.C. § 1182(d)(5)(A).  It states:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

*Id.*  We may review the agency's § 1182(d) parole determinations — regarding the grant, denial, and revocation of parole — for abuse of discretion based on the applicable statutes and regulations.  *Jean v. Nelson*, 472 U.S. 846, 856-57 (1985).

**IV.      DISCUSSION**

**A.      We have habeas jurisdiction to review Mr. Kaziev's claim that he is being unlawfully detained**

Mr. Kaziev challenges the lawfulness of his detention under § 1225.  As such, he raises a core habeas claim over which we have jurisdiction.  The government does not argue otherwise. And our exercise of jurisdiction comports with (1) the strong presumption in favor of judicial review of questions of statutory interpretation and constitutional law; and (2) the particularly clear statement required by Congress to preclude habeas review.  *Kim*, 538 U.S. at 517 (citing *St. Cyr*, 533 U.S. at 298, 308-09).  Given this backdrop, and the lack of any INA provision that

clearly precludes review of Mr. Kaziev's challenge to the legality of his detention under § 1225,[8]

we have jurisdiction over this issue.

**B.      Mr. Kaziev is not subject to mandatory detention under § 1225, such that his present detention under that provision is unlawful**

The government argues that Mr. Kaziev is lawfully detained under 8 U.S.C. § 1225(b)(1).

DI 3 at 15-19.  This is the sole authority upon which the government relies to detain Mr. Kaziev.

*Id*. at 15-21.  As we have concluded numerous times — alongside the overwhelming majority of

courts across the nation and in this district — § 1225(b) does not apply to individuals like Mr.

Kaziev who are already here.[9]  Based on the reasoning articulated in these opinions, Mr. Kaziev

---

[8] In *Gagiev*, we described the INA provisions and explained why none of them precluded review of Mr. Gagiev's challenge to the legality of his detention under § 1225.  *Gagiev*, 2026 WL 657739, at *8-9.  We rely upon that analysis, which equally applies to Mr. Kaziev's petition, and do not reiterate it here.

[9] *Diop v. Jamison, et al.*, No. 25-cv-6946, ECF 7 at 3 (joining "the 'vast majority' of courts confronted with this issue" of whether resident noncitizens are subject to detention under § 1225 or § 1226 and that "have rejected the government's position" that § 1225 applies, "including all 50 decisions from judges in this district to date.") (citing *Patel v. McShane*, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025) (Brody, J.); *Ndiaye v. Jamison*, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025) (Sánchez, J.); *Demirel v. Fed. Det. Ctr. Philadelphia*, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (Diamond, J.); *Kashranov v. Jamison*, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025) (Wolson, J.); *Cantu-Cortes v. O'Neill, et al.*, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025) (Kenney, J.); *Centeno Ibarra v. Warden of the Federal Detention Center, et al.*, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025) (Rufe, J.); *Buele Morocho v. Jamison, et al.*, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025) (Gallagher, J.); *Diallo v. O'Neill, et al.*, 2025 WL 3298003 (E.D. Pa. Nov. 26, 2025) (Savage, J.); *Rios Porras v. O'Neill, et al.*, 2025 WL 3708900 (E.D. Pa. Nov. 25, 2025) (Beetlestone, C.J.); *Wu v. Jamison, et al.*, No. 25-cv-6469 (E.D. Pa. Dec. 1, 2025) (Gallagher, J.); *Flores Obando v. Bondi*, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025) (Brody, J.); *Valdivia Martinez v. FDC*, No. 25- cv-6568 (E.D. Pa. Dec. 1, 2025) (Savage, J.); *Soumare v. Jamison*, 2025 WL 3461542 (E.D. Pa. Dec. 2, 2025) (Henry, J.); *Yilmaz v. Warden, FDC*, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025) (Rufe, J.); *Nogueira-Mendes v. McShane*, 2025 WL 3473364 (E.D. Pa. Dec. 3, 2025) (Slomsky, J.); *Juarez Velazquez v. O'Neill, et al.*, 2025 WL 3473363 (E.D. Pa. Dec. 3, 2025) (Henry, J.); *Perez-Suspes v. Rose, et al.*, 2025 WL 3492820 (E.D. Pa. Dec. 5, 2025) (Brody, J.); *Delgado Villegas v. Bondi, et al.*, No. 25-cv-6143 (E.D. Pa.

11

clearly is not "arriving in the United States" and "seeking admission[,]" so he does not fall under

§§ 1225(b)(1)(A)(i) or 1225(b)(2) — the Arriving Aliens Provision.  8 U.S.C.

§ 1225(b)(1)(A)(i), (b)(2).  As explained above, and as is evident from the focus of the parties'

arguments, the only other way for Mr. Kaziev to be subject to mandatory detention under § 1225

would be under § 1225(b)(1) — specifically, if he fell under § 1225(b)(1)(A)(iii)'s Designation

Provision.  For the following reasons, we conclude that Mr. Kaziev, who was paroled into the

United States, is not subject to § 1225(b)(1), nor the mandatory detention provision contained

therein.[10]  His detention pursuant to § 1225(b)(1), during which he has been denied a bond

hearing, thus is unlawful.

i.    **The plain text of § 1225(b)(1) does not support Mr. Kaziev's detention**

The Designation Provision pertains to "an alien . . . who has not been admitted or paroled

into the United States, and who has not affirmatively shown, to the satisfaction of an

immigration officer, that the alien has been physically present in the United States continuously

---

Dec 4, 2025) (Diamond, J.); *Hidalgo et al. v. O'Neill, et al.*, No. 25-cv-6775 (E.D. Pa. Dec. 5, 2025) (Diamond, J.); *Conde v. Jamison, et al.*, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025) (Brody, J.); *Rodrigues Pereira v. O'Neill, et al.*, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025) (Marston, J.); *Bhatia v. O'Neill, et al.*, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025) (Rufe, J.); *Anirudh v. McShane, et al.*, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025) (Bartle, J.); *AcostaCibrian*, No. 25-cv-6650 (E.D. Pa. Dec. 9, 2025) (Gallagher, J.); *Picon v. O'Neill, et al.*, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025) (Perez, J)).

[10] In reaching this conclusion, we concur with the persuasive interpretations of numerous courts, both in this district and across the country, that found that § 1225(b)(1) does not authorize the expedited removal and detention of noncitizens who were paroled into the United States under § 1182(d)(5)(A).  *See, e.g.*, *Vasquez-Rosario*, 2026 WL 196505 at *7; *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 297 (E.D.N.Y. 2025) (citing cases); *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 82-89 (D.D.C. 2025).  So too, most every court in our district has agreed that § 1225(b)(1) does not apply to individuals who had been temporarily paroled into the United States.  *See, e.g.*, *Imamov v. Jamison*, 2026 WL 1164682, at *4 (E.D. Pa. Apr. 29, 2026) (collecting cases).

for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph."  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  Mr. Kaziev has not been continuously present in the United States prior to the determination of his inadmissibility.  But, as numerous other courts have concluded, we find that the fact that Mr. Kaziev was temporarily paroled into the United States means that he "has . . . been . . . paroled into the United States" within the meaning of § 1225(b)(1)(A)(iii)(II), so he does not fall within the Designation Provision.  We reach this conclusion for several reasons.

Section 1225(b)(1)(A)(iii)(II)'s text[11] uses the present perfect phrase "has not been . . . paroled into the United States" — indicating that it applies to noncitizens who have not, at any point, been paroled into the United States.  8 U.S.C. 1225(b)(1)(A)(iii)(II).  The present perfect is generally ambiguous as to whether the condition is still going on,[12] but the negative of the present perfect means that condition never happened.  To wit, the text does not state that it applies to a noncitizen who "is not currently on parole."  *See, e.g.*, *Coalition*, 805 F. Supp. 3d at 83 (stating "the Designation Provision forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States."); *Vasquez-Rosario*, 2026 WL 196505, at *7 (explaining this textual distinction); *Rodriguez-Acurio*, 811 F. Supp. 3d at 299 (same); *see also Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010) (noting that "Congress' use of a verb tense is significant in construing statutes.") (citation modified) (citation omitted).

---

[11] We must begin "with the statutory text and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."  *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (citation modified) (citation omitted).

[12] If you say your friend "has been sick," he might be better now or he might still be sick, but he was certainly, at some time, sick.  And the negative, "has not been sick," means your friend was not sick at any time.

ii.     **Any ambiguity in the text of § 1225(b)(1) resolves in favor of finding Mr. Kaziev is not subject to mandatory detention under that provision**

To the extent the statutory language might be viewed as ambiguous,[13] interpretive canons support the conclusion that the Designation Provision does not apply to Mr. Kaziev because he was previously paroled into the United States.  The *noscitur a sociis* canon suggests that the juxtaposition of "admitted" and "paroled" in the phrase "admitted or paroled into the United States" means that admission and parole, in this context, refers to the discrete event of how the noncitizen entered the United States (*i.e.*, he entered by manner of admission or parole) because "admitted" only refers to an individual's manner of entry — not his status.  *See, e.g.*, *Rodriguez-Acurio*, 811 F. Supp. 3d at 299-300 (reasoning similarly) (citations omitted).  Read as such, an individual is "paroled" within the meaning of § 1225(b)(1)(A)(iii)(II) at a specific moment in time — for Mr. Kaziev, this moment occurred on December 20, 2023.  The preposition "into" in the phrase "paroled into the United States" also suggests that Congress was describing a noncitizen's entrance inside a place, not his status as a parolee.  *Rodriguez-Acurio*, 811 F. Supp. 3d at 300 (employing similar reasoning) (citations omitted).

Nor do we read the language "has not been admitted or paroled into the United States" as relevant only to the screening process conducted by immigration authorities upon the initiation of a noncitizen's immigration proceedings.  *See Ribeiro v. Jamison*, 2026 WL 1413551, at *5-6 (E.D. Pa. May 20, 2026) (concluding as such).  Section 1225(b)(1) is titled "Inspection of aliens

---

[13] *See, e.g.*, *Rodriguez-Acurio*, 811 F. Supp. 3d at 299 (finding "ambiguity in the phrase 'has not been . . . paroled into the United States" but concluding, in agreement with *Coalition*, 805 F. Supp. 3d at 83, that the "text of the Designation Provision prohibits 'the expedited removal of noncitizens who have been, at any point in time, paroled into the United States.'") (citation modified) (citations omitted).

arriving in the United States and certain other aliens who have not been admitted or paroled."  8 U.S.C. § 1225(b)(1).  The screening procedures under § 1225(b)(1)(A), the asylum interview procedures under § 1225(b)(1)(B), and the mandatory detention provisions under §§ 1225(b)(1)(B)(ii) and (iii)(IV) are all nested under § 1225(b)(1).  Logically, § 1225(b)(1)'s titular language (stating that it pertains to "aliens who have not been . . . paroled") therefore applies not only to the screening procedures, but also to the mandatory detention provisions.  Based on our reading of "have not been . . . paroled[,]" nothing under § 1225(b)(1) — including the mandatory detention provisions — applies if the noncitizen was paroled into the United States.

Our reading also harmonizes with the INA as a whole, and the regulatory framework surrounding it.  Section 1182(d)(5)(A) states that parole "shall not be regarded as an admission of the alien[;]" this again indicates that parole is an event that occurs at a specific moment in time.  8 U.S.C. § 1182(d)(5)(A); *Coalition*, 805 F. Supp. 3d at 85-86.  That this provision further describes parole as "a third option" for "applicants for admission" suggests that an individual is an "applicant[] for admission" while his parole is active.  8 U.S.C. § 1182(d)(5)(A); *Coalition*, 805 F. Supp. 3d at 86 (citing *Biden v. Texas*, 597 U.S. 785, 806 (2022)).  The government, and some of the courts from this district that have reached different conclusions,[14] have emphasized that § 1182(d)(5)(A) states that, if a noncitizen's parole is terminated, he must "return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  But if a noncitizen is an "applicant[] for admission" while his parole

---

[14] *See, e.g.*, *Ribeiro*, 2026 WL 1413551, at *4-6.

15

is active, then his "return . . . to the custody from which he was paroled" does not return him to the status of an applicant for admission who is just arriving at the border because he already has the "applicant for admission" status of someone who has been residing in the United States. *Coalition*, 805 F. Supp. 3d at 86 (applying this reasoning).  Instead, the noncitizen whose parole ends must "continue" to be treated as an applicant for admission, just like all the other undocumented individuals already living in the United States who are "applicant[s] for admission" and are not subject to expedited removal. *Vasquez-Rosario v. Noem*, 2026 WL 196505 at *8 (citations omitted).  Such individuals are subject to § 1226.  Similarly, in the Third Circuit's description of what happens when parole is revoked, the Court stated that the noncitizen's "admissibility is determined in exclusion or the more recent removal proceedings" and specifically cited 8 U.S.C. §§ 1226 and 1229a — not § 1225.  *Chi Thon Ngo v. INS*, 192 F.3d 390, 392 n.1 (3d Cir. 1999).[15]

The regulations implementing the INA support our reading.  Title 8 C.F.R. § 245.1(b)(3) makes a noncitizen ineligible to apply for adjustment of status if he "was not admitted or paroled following inspection by an immigration officer." *Id.*  This suggests that "paroled" constitutes a discrete event in time.  Moreover, nothing in this regulation indicates that a noncitizen so paroled would be ineligible for adjustment of status if his parole (which is necessarily temporary under

---

[15] We do not read the *Chi Thon Ngo* Court's statement that a noncitizen whose parole is revoked "reverts to the status of an applicant for admission" as reverting them to the status of an applicant for admission who is at the border and has never been paroled. *Chi Thon Ngo*, 192 F.3d at 392 n.1.  Instead, the Court appears to be distinguishing between a noncitizen who has the status of being on parole, versus a noncitizen who no longer carries that status and is just an applicant for admission.  Nothing in this case indicates that, once it ends, parole is treated as if it never happened.  And, again, the Court notably did not cite § 1225 as applying to noncitizens whose parole ends — rather, it cites §§ 1226 and 1229a.

§ 1182(d)(5)(A)) is no longer active.  This regulation also provides that noncitizens who have been paroled are treated differently, in at least some respects, than noncitizens who have never been paroled[16] — suggesting that there is a difference in the due process rights afforded to such individuals.  *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (stating that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (citations omitted).  The government points to 8 C.F.R. § 212.5(e)(2)(i), which states that, after a noncitizen's parole terminates, "[a]ny further inspection or hearing shall be conducted under section 235 [i.e., § 1225] or 240 [i.e. § 1229a] of the Act."  8 C.F.R. § 212.5(e)(2)(i).  But this regulation supports our reading.[17]  First, this regulation does not state that noncitizens whose parole ends are subject to mandatory detention under § 1225.  It says only that further inspections and hearings must be pursuant to § 1225 or § 1229a.  Second, and importantly, inspection under § 1225 does not necessarily lead to expedited removal proceedings.  As the *Coalition* Court cogently explained, upon inspecting an applicant for admission, the immigration officer will determine whether that noncitizen falls under the Arriving Aliens Provision or the Designation Provision (which would subject them to expedited removal via a § 1225(b)(1), a.ka. a § 235, proceeding) or whether they do not fall into

---

[16] *See Coalition*, 805 F. Supp. 3d at 84-85 (reasoning that this regulation indicates that "parole has ongoing legal effect even after it expires or is terminated.").

[17] The analysis might proceed differently if the regulations conflicted with the statute. Indeed, to the extent that the statutory provisions regarding parole and mandatory detention are ambiguous, we do not defer to the agency's interpretations of those statutes.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).  But here, the regulations accord with our reading of the statute.

17

either group but do not "clearly and beyond a doubt" meet the admission criteria (which would

subject them to regular removal proceedings under § 1229a, a.k.a. a § 240 proceeding).

*Coalition*, 805 F. Supp. 3d at 88-89.

### iii.    The entry fiction doctrine does not alter our conclusion that § 1225 does not apply to Mr. Kaziev

We are also unpersuaded that the entry fiction doctrine renders § 1225 applicable to Mr.

Kaziev.  This doctrine treats noncitizen parolees, for due process purposes, as if they remain at

the U.S. border.  *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953); *Dep't of*

*Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).  It holds that, for "an alien on the

threshold of initial entry[,]" "[w]hatever the procedure authorized by Congress is, it is due

process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212 (citations omitted).

Consistent with our analysis above, we conclude that "the procedure authorized by Congress" for

people like Mr. Kaziev, who were paroled into the United States and have been present here

prior to their detention, is detention pursuant to 8 U.S.C. § 1226 — not § 1225.

Additionally, as we detailed in *Gagiev*, the entry fiction cases are easily distinguishable

from the situation presented here.[18]  None of these decisions addressed § 1225 and whether it

applies to noncitizens paroled into the United States.  *See, e.g.*, *Mezei*, 345 U.S. 206;

*Thuraissigiam*, 591 U.S. 103; *Kaplan v. Tod*, 267 U.S. 228 (1925); *Leng v. Barber*, 357 U.S. 185

---

[18] In addition to our discussion in this section, we rely upon our detailed analysis of the factual distinctions between these entry fiction cases and the case now before us.  *See Gagiev*, 2026 WL 657739, at *12.  We will not repeat this analysis here.  As with Mr. Gagiev, Mr. Kaziev received a screening interview for his asylum application, was paroled into the United States, and has been living here for nearly 2.5 years.  During this time, he was not under the custody or control of immigration authorities and was generally free to move about the United States.  Such factors distinguish Mr. Kaziev from Mr. Mezei, Ms. Kaplan. Mr. Thuraissigiam, and Ms. Leng.  *See id.*

(1958). *Mezei*, *Kaplan*, and *Leng* were each decided before the passage of IRRIRA. These cases also focus on the legal status of parolees, with a particular emphasis on the fact of parole not constituting an admission into the United States that alters the noncitizen's legal status. *See, e.g.*, *Leng*, 357 U.S. at 188 (focusing on whether the grant of temporary parole "effects a change in the alien's legal status"); *Mezei*, 345 U.S. at 215 (explaining that the noncitizen did not have any "additional rights" once removed "from ship to shore" because he kept the same status "as if stopped at the border"). But, as we have explained, § 1225(b)(1)(A)(iii)(II) is about a discrete event in time — the event of paroling an individual into the United States — not the parolee's legal status. Nor does anything in § 1225(b)(1)(A)(iii)(II) state that it applies to individuals who are no longer parolees as a matter of status. The status-based logic of the entry fiction doctrine thus does not apply to the specific statutory language of § 1225. So too, *Thuraissigiam* — the only of these four cases to post-date the enactment of §§ 1225 and 1226 — supports our interpretation. There, the court indicated that, had Mr. Thuraissigam been released from custody, "[w]ithout a change in status, he would remain subject to arrest, detention, and removal" under §§ 1226(a) and 1229a(e)(2). *Thuraissigam*, 591 U.S. at 119 (citing 8 U.S.C. §§ 1226(a), 1229(e)(2)). The Court did not say that § 1225 would apply to such a case.

iv. **Constitutional avoidance counsels in favor of our interpretation**

Our conclusion that § 1225(b)(1) does not apply to individuals who were paroled into the United States under § 1182(d)(5)(A) is supported by the statutory text, the INA as a whole, and the implementing regulations. But there is yet another reason to favor our interpretation: this reading avoids due process concerns implicated by the government's interpretation. The Second Circuit recently explained in its decision finding that § 1225(b)(2) does not apply to noncitizens

19

already present in the country: "assuming *arguendo* that the statutory language is ambiguous and the government's interpretation is a plausible one, it sounds constitutional alarms that would warrant its rejection." *Da Cunha v. Freden*, 175 F.4th 61, 94 (2d Cir. 2026).  The constitutional avoidance canon "counsel[s] that ambiguous statutory language be construed to avoid serious constitutional doubts." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 516 (2009) (citation omitted).  And Justice Barrett recently explained that "if the better reading leads to a disfavored result (like provoking a serious constitutional question), the court will adopt an inferior-but-tenable reading to avoid it." *Biden v. Nebraska*, 600 U.S. 477, 508-09 (2023) (Barrett, J., concurring).

The Supreme Court has been clear that Mr. Kaziev has certain due process rights, just like all persons within the United States — including noncitizens who are lawfully or unlawfully here, temporarily here, or permanently here.  *Zadvydas*, 533 U.S. at 693.  As discussed, there is reason to conclude that Congress gave Mr. Kaziev greater due process rights compared to an individual who is at the border and has never been paroled into the United States, or who is paroled but kept in continuous custody like the noncitizens in *Thuraissigiam*, *Mezei*, *Kaplan*, and *Leng*.[19]  Here, the government is purporting to detain him, regardless of whether he presents a risk of committing a crime or absconding (and there is nothing on this record to indicate that he presents any such risk).  *See Jennings*, 583 U.S. at 286 (permitting immigration officials to

---

[19] *See Zadvydas*, 533 U.S. at 693 ("stating that "the legal circumstance changes" "once an alien enters the country" in terms of due process rights); *see also* 8 C.F.R. § 245.1(b)(3) (indicating that eligibility for adjustment of status may hinge upon whether the noncitizen was "admitted or paroled following inspection by an immigration officer" and suggesting that a paroled noncitizen might be eligible for adjustment); *see infra* at 17-19 (distinguishing the entry fiction cases); *see* 8 U.S.C. § 1226 (providing for a bond hearing).

detain noncitizens temporarily to determine the noncitizens' status, without risking their flight or engagement in criminal activity).  The government's interpretation enables Mr. Kaziev's continued detention, without a bond hearing.  And this detention is poised to continue for many months: his next hearing is scheduled for April 1, 2027.  *See EOIR Automated Case Info.*, EXEC. OFF. FOR IMMIGR. REV., https://acis.eoir.justice.gov/en (search by 241 148 991, Russia, or access an archived version at https://perma.cc/6LJ7-TWDV) (last visited July 31, 2026).  We appreciate the concerns expressed in *Da Cunha* that such detention carries with it a serious risk of depriving Mr. Kaziev of due process.  *Da Cunha*, 175 F.4th at 94-96.

In contrast, our interpretation reflects Congress's apparent design that, if Mr. Kaziev is detained, he is entitled to a bond hearing at which he will have the opportunity to demonstrate that he does not present a flight risk or a danger to persons or property.  If he makes such a showing, he may be released on bond.  *See* 8 CFR § 1236.1(c)(8).  Hence, another good reason to reject the government's interpretation is that we may avoid potentially serious due process concerns.

C.    **Even if the government purported to detain Mr. Kaziev under § 1226, which it does not so claim, the government has not shown that it followed the required process for doing so**

The government offers no basis for detaining Mr. Kaziev other than § 1225(b)(1).  DI 3 at 15-22.  As we have previously explained in *Gagiev* and other cases before us, § 1226 applies to Mr. Kaziev, such that any detention of Mr. Kaziev requires a bond hearing.[20]  Because the

---

[20] Section 1226 of the INA applies to individuals like Mr. Kaziev who are "already present in the United States." *Jennings*, 583 U.S. at 303 (citing 8 U.S.C. § 1226).  By default, noncitizens like Mr. Kaziev fall under § 1226(a); they only fall under § 1226(c) if they meet specific crime-related criteria.  *Id.* at 303, 306 (citing 8 U.S.C. § 1226(a), (c)).  The government

21

government failed to provide Mr. Kaziev with this required process, it violated his statutory and constitutional due process rights.

## V.      CONCLUSION

Mr. Kaziev's detention without a bond hearing, pursuant to 8 U.S.C. § 1225(b), is statutorily and constitutionally unlawful.  Accordingly, we grant Mr. Kaziev's habeas petition to the extent that we order his immediate release from detention as provided in the accompanying order.  Because we do so, we decline to address Mr. Kaziev's other claims.

---

does not assert that Mr. Kaziev is covered by § 1226(c), nor is there any reason in the record to find that he is so covered.  Section 1226(a) thus applies to Mr. Kaziev, and under the applicable federal regulations, Mr. Kaziev must receive a bond hearing at the outset of his detention.  *Id.* at 306 (citing 8 U.S.C. §§ 1225(a), (c); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).  The government's failure to provide Mr. Kaziev with a bond hearing was therefore unlawful.

This failure to provide a bond hearing also violates Mr. Kaziev's Fifth Amendment due process rights.  "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citation modified) (citations omitted).  Applying the familiar *Matthews* factors, we find that due process requires a pre-deprivation bond hearing for Mr. Kaziev because (1) he has a strong liberty interest at stake; (2) the lack of any individualized assessment respecting Mr. Kaziev creates a high risk of erroneous deprivation of his rights — risks that a bond hearing could help guard against; and (3) the bond hearing requirement imposes a minimal administrative burden on the government.  *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *see also Kashranov*, 2025 WL 3188399, at *5 (applying the *Matthews* factors in this context).